USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 06/28/05

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUAN CANDELARIA,

        Plaintiff,

    -v-

ERICKSON, individually and in his capacity
as a Registered Nurse employed by the New
York State Department of Correctional Services
("DOCS"); GITA RAMASWAMY, M.D.,
individually and in her capacity as Director of the
St. Agnes Hospital and ST. AGNES HOSPITAL,
individually and in its capacity as a private entity,

        Defendants.

No. 01 Civ. 8594 (LTS)(RLE)

## OPINION AND ORDER

APPEARANCES:

JUAN CANDELARIA
No. 89-T-5069
Wende Correctional Facility
3622 Wende Road
P.O. Box 1187
Alden, New York 14004-1187

*Plaintiff Pro Se*

CALLAN, KOSTER, BRADY &
BRENNAN, LLP
  By: Michael P. Kandler, Esq.
One Whitehall Street, 10th Floor
New York, New York 10004

*Attorneys for Defendant Gita Ramaswamy,
M.D.*

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
  By: Laura B. Jordan, Esq.
3 Gannett Drive
White Plains, New York 10604

*Attorneys for Defendant St. Agnes Hospital*

LAURA TAYLOR SWAIN, United States District Judge

Copies mailed  6/27/05
Chambers of Judge Swain

This matter, which was originally filed in the Western District of New York and then transferred to the Southern District of New York, comes before the Court on the following motions: Defendant St. Agnes Hospital's ("St. Agnes") motion to dismiss the amended complaint; Plaintiff pro se Juan Candelaria's ("Plaintiff" or "Candelaria") motion for a default judgment against Defendant Gita Ramaswamy, M.D. ("Ramaswamy") and for an order striking Ramaswamy's untimely answer; Defendant Ramaswamy's motion for an order permitting late service and filing of Ramaswamy's answer, and for summary judgment pursuant to Fed. R. Civ. P. 56 on Plaintiff's claims as against Ramaswamy; Plaintiff Candelaria's motion for sanctions pursuant to Fed. R. Civ. P. 11 against Ramaswamy; Plaintiff Candelaria's cross-motion for summary judgment pursuant to Fed. R. Civ. P. 56 as to his claims against Defendants St. Agnes and Ramaswamy;[1] and Plaintiff Candelaria's motion for a default judgment against Defendant Philip T. Erickson ("Erickson").[2]

In his Second Amended Complaint, Plaintiff asserts a claim under 42 U.S.C. § 1983, alleging deliberate indifference to Plaintiff's serious medical needs in violation of

---

[1]    While Candelaria's cross-motion for summary judgment has been pending, Candelaria filed two additional motions making the same requests for relief and presenting essentially the same subject matter. The instant decision addresses those motions, which are both duplicative and untimely, as well.

[2]    Plaintiff, in the Second Amended Complaint, refers to Defendant Erickson as "Erickson" without specifying a first name. The Court issued an order, dated March 5, 2002, requesting that the New York State Attorney General's Office attempt to ascertain the most recent address for Defendant Erickson. (See Affirmation in Support of Pl.'s Motion for Default Judgment Against Defendant Erickson, Exh. A-1.) The New York State Attorney General's Office responded with a letter, dated March 26, 2002, identifying Philip T. Erickson as fitting the description of Defendant Erickson in Plaintiff's complaint. (Id., Exh. A-2.) Plaintiff has since made efforts to serve process upon, and now moves for a motion for a default judgment against, Philip T. Erickson. (Id. ¶¶ 5-12.)

Plaintiff's Eighth and Fourteenth Amendment rights, against Erickson arising from Erickson's alleged treatment of Plaintiff in his capacity as a Registered Nurse employed by the New York State Department of Correctional Services ("DOCS"). Plaintiff also asserts claims under 42 U.S.C. § 1983, alleging gross negligence and deliberate indifference to Plaintiff's serious medical needs in violation of Plaintiff's rights under the Eighth and Fourteenth Amendments, against Defendants St. Agnes Hospital and Ramaswamy arising from medical treatment Plaintiff allegedly received while a patient at St. Agnes Hospital. In addition, since Plaintiff refers in his Second Amended Complaint to accepted standards of medical practice, the Court will construe the Second Amended Complaint to also assert state law medical malpractice claims against Erickson, St. Agnes and Ramaswamy.

For the following reasons, Defendant St. Agnes' motion to dismiss the Second Amended Complaint is denied, Plaintiff's motion for a default judgment against Ramaswamy and for an order striking Ramaswamy's untimely answer is denied, Ramaswamy's motion for an order permitting the late service and filing of Ramaswamy's answer is granted, Ramaswamy's motion for summary judgment pursuant to Fed. R. Civ. P. 56 is granted, Candelaria's cross-motion for summary judgment pursuant to Fed. R. Civ. P. 56 is denied, Candelaria's motion for Rule 11 sanctions as to Ramaswamy is denied, and Candelaria's motion for a default judgment against Defendant Erickson is denied without prejudice to renewal.

BACKGROUND[3]

The claims in this action relate to the treatment of Plaintiff's chronic kidney ailments, which have developed into End Stage Renal Disease ("ESRD"). Plaintiff alleges deliberate indifference to his serious medical needs and malpractice both by Defendant Erickson while Plaintiff was imprisoned, and by St. Agnes and Ramaswamy during periods in which Plaintiff was hospitalized at St. Agnes. Plaintiff's allegations regarding the treatment he received during his hospitalizations at St. Agnes will be treated first.

*Plaintiff's Allegations Against St. Agnes and Ramaswamy*

Second Amended Complaint

In his Second Amended Complaint, Plaintiff Candelaria, an inmate in the custody of DOCS, alleges that he was referred to St. Agnes by DOCS and admitted into the hospital on August 25, 1997. (Second Amended Complaint ("Compl.") ¶¶ 44, 45.) Plaintiff alleges that during his time at St. Agnes, which apparently included a stay from August 25, 1997, through September 17, 1997, and another stay from October 29, 1997, through December 2, 1997, see Pl's Stmt. Pursuant to Local Rule 56.1(a) ("Pl's Rule 56.1 Stmt.") ¶¶ 5-17; Compl. ¶ 45, Plaintiff was treated by a team of physicians and nurses under the instruction of Ramaswamy (Plaintiff alleges that Ramaswamy was the Medical Director of St. Agnes during the relevant period) who

---

[3]     The facts are taken from Plaintiff's Second Amended Complaint as well as the affidavits and other submissions proffered by the parties to this action. The allegations in the Second Amended Complaint are taken as true for the purposes of deciding Defendant St. Agnes' motion to dismiss. The allegations in the Second Amended Complaint, as well as the material allegations in Plaintiff's papers relating to his cross-motion for summary judgment, are construed liberally and in the light most favorable to Plaintiff in evaluating the instant motions insofar as they are directed at the sufficiency of the pleadings.

diagnosed him first with Chronic Renal Failure ("CRF") and later as suffering from ESRD. (Compl. ¶¶ 43-44; Affidavit of Juan Candelaria in Supp. of Cross-Notice of Motion for SJ, dated June 8, 2002, ("Candelaria Aff.") ¶ 4.)  According to Plaintiff, the cause of these conditions remained unknown to him because Ramaswamy and St. Agnes deliberately failed to conduct the appropriate physical testing and evaluation.  (Compl. ¶ 45.)

Plaintiff also alleges that it was not until he heard the expert testimony of Dr. David S. Goldfarb and Dr. Steven Fishbane during a 2000 jury trial of Plaintiff's earlier deliberate indifference claims arising from DOCS' treatment of Plaintiff's kidney ailments that he realized that his CRF and ESRD might have been caused by a disease called Focal Segmental Glomerular Sclerosis" ("FSGS"), and that such disease could have been diagnosed if the treating physicians at St. Agnes had performed a kidney biopsy either upon diagnosing Plaintiff with CRF, or later upon diagnosing Plaintiff with ESRD.  (Id. ¶¶ 46-47.)  Plaintiff alleges that FSGS is treatable through a number of methods other than dialysis, and that, had the FSGS been diagnosed in a timely fashion, he might not have become wholly dependent on dialysis for his continued survival.  (Id. ¶¶ 48-50.)

Plaintiff alleges that, after his discharge from St. Agnes on December 2, 1997, he was transferred back to prison where he was scheduled to receive hemodialysis treatment three times a week (each treatment taking 3½ hours).  (Compl. ¶ 50.)  According to Plaintiff, unless he can obtain a kidney transplant, he will be dependent on such treatment for his continued survival for the rest of his life.  (Id.)

Summary Judgment Papers

In his summary judgment papers, Plaintiff details his hospitalizations at St. Agnes,

contending that, during his first stay at St. Agnes, Plaintiff's treating physicians diagnosed Plaintiff with CRF, represented to Plaintiff that this condition was caused by high blood pressure and indicated that a special renal diet would ameliorate the condition. (Candelaria Aff. ¶ 4). Although not specifically stated in the Second Amended Complaint or Plaintiff's affidavit, Plaintiff contends in his Rule 56.1 Statement that he was discharged from St. Agnes and returned to Green Haven Correctional Facility ("Green Haven"), his place of incarceration, on September 17, 1997, with a prescription for a special renal diet restricting protein intake, but that he did not receive such a diet while at Green Haven. (Pl's Rule 56.1 Stmt. ¶ 6.)

Plaintiff was again admitted to St. Agnes on October 29, 1997, and was diagnosed with ESRD. Plaintiff's treating physicians continued to represent to Plaintiff that his condition was the result of high blood pressure and an inability to obtain the prescribed renal diet. (Candelaria Aff. ¶ 4.) On or about November 6, 1997, Plaintiff began receiving hemodialysis treatment. (Id.) At no point during Plaintiff's hospitalizations at St. Agnes did Plaintiff's treating physicians perform a kidney biopsy on Plaintiff. (Pl's Rule 56.1 Stmt. ¶¶ 8-17.) Plaintiff contends that, unless he can obtain a kidney transplant, he will be dependent on such treatment for his continued survival for the rest of his life. (Candelaria Aff. ¶ 11.)

Plaintiff contends that Dr. Gita Ramaswamy was the Medical Director of St. Agnes Hospital during both of the periods when Plaintiff was hospitalized at St. Agnes, and that Ramaswamy was directly responsible for many of the treatment decisions that were made in connection with Plaintiff's medical care. (Candelaria Aff. ¶ 13; Pl's Rule 56.1 Stmt., Exs. D-4-D-9.) Defendant Ramaswamy, however, contends that she has never been the Medical Director at St. Agnes and that, at all times relevant to Plaintiff's Second Amended Complaint, she was the

Director of the Pathology Laboratory at St. Agnes. (Affidavit of Gita Ramaswamy, dated April 23, 2002, ("Ramaswamy Aff.") ¶ 6.) According to Ramaswamy, she neither made nor was responsible for any treatment decisions relating to Plaintiff's medical care. Ramaswamy further contends that, in her capacity as Director of St. Agnes' Pathology Laboratory, she never made any treatment decisions concerning patients at St. Agnes or trained any medical personnel in the diagnosis and management of medical conditions. (Id. ¶¶ 7, 9.)

On September 8, 1998, Candelaria filed a civil rights lawsuit in the Southern District of New York[4] against several DOCS employees at Green Haven alleging, inter alia, that the employees' failure to provide Candelaria with a special renal diet amounted to deliberate indifference to his medical needs in violation of his rights under the Eighth Amendment. (Candelaria Aff. ¶¶ 5-6.) Plaintiff contends that certain expert testimony provided by Dr. David S. Goldfarb and Dr. Steven Fishbane during a jury trial in that matter alerted Plaintiff to the possibility that his CRF/ESRD might not have been caused by his inability to receive a special renal diet while in the custody of DOCS, but rather might have been the result of FSGS, which is often treatable and can be diagnosed by means of a kidney biopsy. (Candelaria Aff. ¶¶ 10-11.) Plaintiff asserts that Defendants' failure to perform the kidney biopsy was deliberate. (Pl's Rule 56.1 Stmt. ¶ 24.) Plaintiff also contends that, if a kidney biopsy had been performed while Plaintiff was a patient at St. Agnes, Plaintiff's underlying kidney disease might have been diagnosed and Plaintiff might never have become dependent on dialysis for survival. (Candelaria Aff. ¶ 11; Pl's Rule 56.1 Stmt. ¶¶ 25-32.)

*Plaintiff's Allegations Against Erickson*

---

[4]     Candelaria v. Cunningham, et al., 98 Civ. 6273 (LAP)(AJP) ("Candelaria I").

Plaintiff Candelaria alleges that between January 15, 1992, and December 2, 1997, Registered Nurse Philip Erickson was responsible for numerous treatment decisions made with respect to Plaintiff's medical care. (Compl. ¶ 4.) Plaintiff further alleges that, despite the fact that Erickson was fully aware that Plaintiff suffered from a variety of medical conditions which, individually and collectively, evidenced a need for treatment of Plaintiff's kidneys (i.e., a neurogenic bladder condition, Plaintiff's need for self-catheterization, the presence of high levels of blood and protein in Plaintiff's urine, the existence of a high serum creatine level of 1.4, and Plaintiff's high blood pressure), Erickson ignored or otherwise failed to treat these signs of kidney problems, failing to refer Plaintiff to a nephrologist or a urologist or place Plaintiff on a special protein-restricted diet. Plaintiff alleges that Erickson's conduct resulted in Plaintiff developing CRF and ESRD, and that Erickson's conduct was a factor in causing Plaintiff's current dependence on dialysis for his continued survival. (Id. ¶¶ 4, 15-43.)

## DISCUSSION

*St. Agnes' Motion to Dismiss*

Defendant St. Agnes has moved to dismiss the Second Amended Complaint with respect to all of Plaintiff's claims against St. Agnes on the following three grounds: lack of subject matter jurisdiction, improper service of process, and expiration of the applicable statutes of limitations. The Court will consider each of St. Agnes' asserted grounds for dismissal in turn.

### Subject Matter Jurisdiction

Defendant St. Agnes contends that the Court lacks subject matter jurisdiction of Plaintiff's claims because there is no diversity of citizenship between the parties, and because

Plaintiff's allegations in the Second Amended Complaint of inadequate medical care and treatment, which, according to St. Agnes, sound in negligence, fail to rise to the level of a constitutional violation because they do not indicate acts or omissions on the part of St. Agnes sufficient to show deliberate indifference to Plaintiff's serious medical needs. As a result, St. Agnes asserts, Plaintiff does not have a viable federal claim against St. Agnes under 42 U.S.C. § 1983.

"Courts generally hold that a case may be dismissed pursuant to Rule 12(b)(1) where a federal claim 'is so plainly insubstantial as to be devoid of any merits and thus does not present any issue worthy of adjudication.'" Claudio v. United States, No. CV-94-5220, 1996 WL 449329, at *2 (E.D.N.Y. July 31, 1996) (quoting Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1189 (2d Cir.1996)). "However, in cases where the asserted basis for subject matter jurisdiction is also an element of the plaintiff's allegedly federal cause of action, we ask only whether – on its face – the complaint is drawn so as to seek recovery under federal law or the Constitution. If so, then we assume or find a sufficient basis for jurisdiction, and reserve further scrutiny for an inquiry on the merits." Id. Thus, "Rule 12(b)(1) generally is not invoked except where the alleged federal question 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such claim is wholly insubstantial and frivolous.'" Claudio, 1996 WL 449329 at *3 (quoting Bell v. Hood, 327 U.S. 678, 682-83 (1946)). Here, the Court finds that the standard for granting a motion to dismiss pursuant to Rule 12(b)(1) has not been met. Accordingly, the Court denies St. Agnes' motion pursuant to Rule 12(b)(1) and will treat the motion as one to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) to the extent it is based on the sufficiency of Plaintiff's

allegations to make out a valid Eighth Amendment claim.

In resolving a motion to dismiss under Rule 12(b)(6), the Court must construe Plaintiff's allegations as true "and construe all well-pleaded factual allegations in the Complaint in plaintiff's favor." Henneberry v. Sumitomo Corp. of America, No. 04 Civ. 2128 (PKL), 2005 WL 1036260, at *2 (S.D.N.Y. May 3, 2005) (citing Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 175 (2d Cir. 2004); Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). A claim should be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). "Pro se complaints, however inartfully pleaded[,] are held to 'less stringent standards than formal [pleadings] drafted by lawyers.'" Sanchez v. Fischer, No. 03 Civ. 4433 (GBD), 2005 WL 1021178, at * 3 (S.D.N.Y. May 2, 2005) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)). Therefore, in light of Plaintiff's pro se status, the Court will construe Plaintiff's Second Amended Complaint liberally and will also consider the materials submitted by Plaintiff in support of his summary judgment motion in evaluating whether Plaintiff has stated an Eighth Amendment claim and, to the extent he has not, whether any deficiency could be cured by amendment.

The Eighth Amendment "prohibits the infliction of 'cruel and unusual punishments,'" including those "that 'involve the unnecessary and wanton infliction of pain.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'"

Chance, 143 F.3d at 702 (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).

The standard for establishing deliberate indifference includes both an objective and a subjective component. Chance, 143 F.3d at 702. "First, the deprivation suffered must be objectively serious;" there must exist a "'condition of urgency, one that may produce death, degeneration, or extreme pain.'" Dawson v. Williams, No. 04 Civ. 1834 (NRB), 2005 WL 475587, at *4 (S.D.N.Y. Feb. 28, 2005) (quoting Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotations and citations omitted)). Second, "the defendant 'must act with a sufficiently culpable state of mind.'" Chance, 143 F.3d at 702 (quoting Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994)). "Deliberate indifference requires more than negligence but less than conduct undertaken for the very purpose of causing harm." Hathaway, 37 F.3d at 66. A plaintiff must allege that a prison official "'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer v. Brennan, 511 U.S. at 837). "[M]ere medical malpractice is not tantamount to deliberate indifference, but it may rise to the level of deliberate indifference when it involves culpable recklessness, i.e., an act or a failure to act . . . that evinces a conscious disregard of a substantial risk of serious harm." Cuoco v. Moritsugu, 222 F.3d 99, 107 (2d Cir. 2000) (internal quotation marks and citations omitted).

Plaintiff alleges in his Second Amended Complaint that he was referred to St. Agnes by DOCS and that he received treatment from the medical staff at St. Agnes between August 25, 1997, and December 2, 1997. (Compl. ¶¶ 44-45.) Plaintiff also alleges that Defendants Ramaswamy and St. Agnes deliberately failed to conduct certain medical testing,

including a kidney biopsy, which could have uncovered the fact that Plaintiff was suffering from a treatable kidney disease. (Id. ¶¶ 45-49.) Plaintiff further alleges that, had the appropriate tests been conducted and the disease been diagnosed, Plaintiff might never have developed the life-threatening condition from which he now suffers or become dependent on dialysis for his continued survival. (Id.)

The Court finds that Plaintiff's allegations that St. Agnes' alleged failure to conduct appropriate testing resulted in Plaintiff developing a life-threatening condition and a reliance on dialysis for survival are sufficient to establish the existence of a serious medical condition and, therefore, to satisfy the objective component of the analysis. As to the subjective prong, Plaintiff alleges in his Second Amended Complaint a "deliberate" failure on the part of St. Agnes to conduct a biopsy. While such an allegation in and of itself may be insufficient to show the requisite culpable mental state, Plaintiff has proffered evidence in connection with his motion for summary judgment from which a rational factfinder could conclude that St. Agnes and its personnel were aware of facts from which FSGS could have been diagnosed and, in failing to take additional diagnostic measures, disregarded an excessive risk of rapid degeneration into renal failure and a need for dialysis. The Court therefore finds that the subjective component of the analysis is satisfied. Accordingly, St. Agnes' motion to dismiss the complaint is denied to the extent it is based on a failure to state a claim upon which relief can be granted.

Improper Service of Process

St. Agnes also contends that the Second Amended Complaint should be dismissed on grounds of improper service of process because St. Agnes, a corporation, was not served in accordance with Fed. R. Civ. P. 4(h), which requires that service be effected

in the manner prescribed for individuals by subdivision (e)(1), or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant . . . .

Fed. R. Civ. P. 4(h). Although the original complaint in this case was filed in October 2000, St. Agnes was not served at that time. (Affidavit of Laura B. Jordan, dated January 2, 2002, ("Jordan Aff.") ¶ 3). On November 21, 2001, St Agnes received via mail copies of the summons and the decision and order issued by District Judge William Skretny of the Western District of New York transferring the case to the Southern District of New York. (Id. ¶¶ 3-4.) Upon receipt of the summons and Judge Skretny's decision, St. Agnes, through its attorneys, served a demand for the complaint upon Plaintiff. (Id. ¶ 5, Ex. B.) On December 2, 2001, Plaintiff mailed a copy of the summons and amended complaint directly to St. Agnes' attorneys. (Id. ¶ 6, Ex. C.)

The Court has discretion to decline to dismiss the complaint in order to allow Plaintiff an additional attempt at service. Grammenos v. Lemos, 457 F.2d 1067, 1071 (2d Cir. 1972) ("the fact of invalidity of the one attempt at service does not automatically require dismissal of the complaint. . . . [T]he court has power, under Fed. R. Civ. P. 4(a), if the service is invalid or improper, to cause additional or new summons to be issued and good service attempted.") Further, "[w]hen dealing with pro se parties, courts interpret the rules dealing with service of process liberally." St. John Rennalls v. County of Westchester, 159 F.R.D. 418, 420 (S.D.N.Y. 1994). Service requirements under Rule 4 are also construed liberally when "a party contesting service of process has received actual notice." Id.

In light of Plaintiff's pro se status, Plaintiff's multiple attempts at service, the fact that St. Agnes received actual notice of the instant action, and the fact that St. Agnes does not

contend that it has suffered any prejudice as a result of Plaintiff's improper effectuation of service, the Court declines to dismiss the action based on Plaintiff's failure to effect proper service. Because counsel for St. Agnes has informed the Court that St. Agnes has ceased operations, the Court hereby directs counsel for St. Agnes to serve on Plaintiff and file with the Court within thirty (30) days of the date of this Opinion and Order a statement indicating where St. Agnes can currently be served. The Clerk's Office is directed to issue an amended summons to Plaintiff, and Plaintiff is directed to provide the amended summons, a copy of the Second Amended Complaint, and any other necessary paperwork, to the U.S. Marshals Service within thirty (30) days of the date that Plaintiff receives the statement indicating where St. Agnes can be served. Plaintiff is directed to consult the Court's <u>Pro Se</u> Office (which is located at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, Room 230, New York, New York 10004) for information as to how he can obtain the amended summons from the Clerk's Office and effect service of process.

### Statute of Limitations

St. Agnes also contends that the Second Amended Complaint should be dismissed because the applicable statutes of limitations have run on Plaintiff's federal and state law claims against St. Agnes.

#### *Plaintiff's § 1983 Claim*

"The statute of limitations for a section 1983 claim is determined from the forum state's statute of limitations for personal injury actions." <u>Taylor v. New York State Dep't of Corrections</u>, No. 03 Civ. 1929 (PKC), 2004 WL 2979910, at *8 (S.D.N.Y. Dec. 22, 2004) (citing <u>Owens v. Okure</u>, 488 U.S. 235, 249-50 (1989)). In New York, which is the state where

Plaintiff's claims arose, the statute of limitations for personal injury actions is three years. Id.;
N.Y. C.P.L.R. § 214(5).

Here, St. Agnes argues that Plaintiff's section 1983 claims are untimely because
the Second Amended Complaint, which was filed on or about April 23, 2001, was filed more
than three years after the date Plaintiff alleges to be the last date he was treated at St. Agnes –
December 2, 1997. St. Agnes concedes, however, that the original complaint in this case was
filed on or about October 17, 2000, when Plaintiff "signed his hand-written complaint and sent it
for filing in the U.S.D.C. for the W.D.N.Y."

Plaintiff invokes the relation-back doctrine, which "allows a plaintiff to assert a
claim which would otherwise be barred by the statute of limitations if 'the claim or defense
asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or
attempted to be set forth in the original pleading . . . '" Colorado Capital v. Owens, No. 03 CV
1126(JS)(WDW), 2005 WL 736539, at * 8 (E.D.N.Y. Mar. 16, 2005) (quoting Fed. R. Civ. P.
15(c)(2)). "The central inquiry under Rule 15(c) is 'whether adequate notice of the matters raised
in the amended pleading has been given to the opposing party within the statute of limitations by
the general fact situation alleged in the original pleading.'" Hutchinson v. U.S., No. 01 CV. 1198
(ILG), 2004 WL 350576, at *5 (E.D.N.Y. Feb. 20, 2004) (quoting Stevelman v. Alias Research,
Inc., 174 F.3d 79, 86 (2d Cir. 1999) (internal citation omitted)). Here, although the original
complaint's allegations concerning St. Agnes were substantially the same as those of the Second
Amended Complaint, St. Agnes never received a copy of the original complaint and only
received notice of the instant action on or about November 21, 2001, when it received the
summons and a copy of Judge Skretny's decision by mail. Thus, even if the claims against St.

Agnes in the Second Amended Complaint were found to be sufficiently similar to relate back to the claims in the original complaint, St. Agnes did not receive timely notice of the matters raised in the original pleading. The Court concludes therefore that the relation-back doctrine does not apply to Plaintiff's section 1983 claim against St. Agnes.

The Court finds, nonetheless, that dismissal of the Second Amended Complaint on statute of limitations grounds as against St. Agnes is not warranted because Plaintiff may be able to establish that his section 1983 claim accrued after 1997. "While state law supplies the statute of limitations for claims under § 1983, federal law determines when a federal claim accrues. The claim accrues when the plaintiff knows or has reason to know of the harm." Connolly v. McCall, 254 F.3d 36, 41 (2d Cir. 2001) (internal quotation marks and citations omitted); see also Veal v. Geraci, 23 F.3d 722, 724 (2d Cir. 1994) ("A claim accrues once the plaintiff knows or has reason to know of the injury which is the basis of his action. . . . [T]he claim accrues when the alleged conduct has caused the claimant harm and the claimant knows or has reason to know of the allegedly impermissible conduct and the resulting harm" (internal quotation marks and citations omitted)). Plaintiff contends that his federal claims did not accrue until July 31, 2000, when he allegedly learned for the first time through testimony in the Candelaria I litigation that St. Agnes and his personnel may have failed properly to diagnose him with FSGS and provide him with treatment that could have prevented him from developing renal failure and ESRD. (Compl. ¶¶ 46-49; Candelaria Aff. ¶¶ 10-11.) It cannot be said at this stage of the litigation that Plaintiff will be unable to prove that he first learned of the allegedly improper conduct of St. Agnes and the alleged resulting injury within the three years preceding the first occasion on which St. Agnes received notice of the claims in this litigation. St. Agnes'

motion to dismiss the Second Amended Complaint on statute of limitations grounds is therefore denied.

### Plaintiff's State Law Medical Malpractice Claim

As to Plaintiff's state law medical malpractice claims against St. Agnes, the applicable statute of limitations under New York law is two years and six months. Haq v. New York Presbyterian Hosp. Cornell Med. Ctr., No. 00 CIV. 6312 (JSM), 2001 WL 1135705, at *2 (S.D.N.Y. Sept. 26, 2001); N.Y. C.P.L.R. § 214-a. Section 214-a provides, in relevant part, as follows:

> An action for medical, dental or podiatric malpractice must be commenced within two years and six months of the act, omission or failure complained of or last treatment where there is continuous treatment for the same illness, injury or condition which gave rise to the said act, omission or failure; provided, however, that where the action is based upon the discovery of a foreign object in the body of the patient, the action may be commenced within one year of the date of such discovery or of the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier.

N.Y. C.P.L.R. 214-a (McKinney 2003). Thus, under New York law, the accrual of a cause of action for medical malpractice not based upon the discovery of a foreign object in the body of the patient is measured from the date of the occurrence of the act, omission or failure complained of as opposed to the date of the discovery of the injury. Helgans v. Plurad, 255 A.D.2d 554, 555 (2d Dept. 1998). The date of accrual of Plaintiff's state law medical malpractice claims for statute of limitations purposes, therefore, is December 2, 1997 – the last date on which Plaintiff was treated at St. Agnes. Therefore, since Plaintiff's state law medical malpractice claim accrued on December 2, 1997, and the Second Amended Complaint was not filed until April 23, 2001, it would appear that Plaintiff's state law claims against St. Agnes are barred by the statute of limitations.

The relation-back doctrine does not apply to save Plaintiff's state law claim against St. Agnes for the same reason it did not apply to save Plaintiff's section 1983 claim against St. Agnes -- St. Agnes did not receive timely notice of the original complaint. As to Plaintiff's argument that St. Agnes waived the statute of limitations defense because its first two "pleadings" were devoid of reference to such a defense, as St. Agnes points out in its reply papers, the first document to which Plaintiff refers, dated November 26, 2001, is not a responsive pleading but a "Demand For Complaint," and the second document to which Plaintiff refers is also not a responsive pleading but rather papers filed in opposition to a motion for a default judgment. Since neither was a responsive pleading within the meaning of Fed. R. Civ. P. 8(c), and Defendant St. Agnes asserted its statute of limitations defense in a timely manner in the instant motion to dismiss, St. Agnes cannot be said to have waived the statute of limitations defense.

Plaintiff also contends that St. Agnes should be precluded from asserting the statute of limitations under the doctrine of equitable estoppel because Plaintiff justifiably relied on representations from St. Agnes staff members that his conditions were the result of high blood pressure and an inability to obtain a renal diet until learning otherwise via the testimony of the two expert witnesses after the statute of limitations had run. "It is the rule that a defendant may be estopped to plead the Statute of Limitations where plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." Simcuski v. Saeli, 44 N.Y.2d 442, 448-49 (N.Y. 1978). "'The elements of estoppel are with respect to the party estopped: (1) conduct which amounts to a false representation or concealment of material facts; (2) intention that such conduct will be acted upon by the other party; and (3) knowledge of the

real facts.'" Smith v. Smith, 830 F.2d 11, 12 (2d Cir. 1987) (quoting Airco Alloys Div., Airco Inc. v. Niagra Mohawk Power Corp., 430 N.Y.S.2d 179 (1980)).

Here, the Court finds that Plaintiff's allegations and evidentiary proffers can be construed to suggest that the staff at St. Agnes had sufficient information via lab reports and other data collected concerning Plaintiff's medical history to warrant suspicion that Plaintiff might be suffering from FSGS. The Court further finds that Plaintiff's allegations and proffers can be construed to suggest that St. Agnes' staff, instead of performing additional tests and other work in an effort to heal Plaintiff, simply told Plaintiff that he had hypertension and had no choice but to undergo dialysis, thereby inducing Plaintiff to refrain from suing or otherwise challenging their failure to provide him with any alternative type of care for his kidney problems. The Court finds that it is not possible at this stage of the litigation to determine whether Plaintiff will be able to satisfy the elements of equitable estoppel.

Accordingly, St. Agnes' motion to dismiss Plaintiff's state law medical malpractice claims on statute of limitations grounds is denied.

*Plaintiff's Motion for a Default Judgment as to Defendant Ramaswamy and for an Order Striking Ramaswamy's Untimely Answer, and Ramaswamy's Motion for an Order Permitting the Late Service and Filing of Ramaswamy's Answer*

Plaintiff moves for a default judgment as to Defendant Ramaswamy and for an order striking Ramaswamy's untimely answer.[5] Plaintiff contends that copies of the summons

_____

[5]    In the same submission, Plaintiff also moves for a stay of all discovery pending resolution of Plaintiff's motions for default judgment, for an order compelling the N.Y.S. Attorney General to provide a mailing address where Defendant Erickson can be served with process, and for an order enlarging the time within which to effectuate services of process as to Erickson. Plaintiff's motion for a stay of discovery is denied as moot given that Plaintiff's motion for a default judgment as to St. Agnes was denied on March 13, 2002, and Plaintiff's remaining motions for

and complaint were served on Defendant Ramaswamy on December 14, 2001, and that Ramaswamy's answer was not timely filed thereafter. Ramaswamy, conceding that her answer was not timely filed, opposes Plaintiff's motion and moves for an order permitting the late service and filing of her answer.

Opposition to a motion for a default judgment is evaluated under the same "good cause shown" standard that is used to evaluate motions to set aside an entry of default pursuant to Fed. R. Civ. P. 55(c). <u>Commercial Bank of Kuwait v. Rafidain Bank</u>, 15 F.3d 238, 243 (2d Cir. 1994). The Second Circuit has established three criteria that a court should assess in determining whether to grant relief from an entry or judgment of default for "good cause": "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." Other "equitable factors" may also be considered – "for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 96 (2d Cir. 1993). Generally, defaults are disfavored and resolution of cases on the merits is strongly preferred. <u>See</u> <u>Meehan v. Snow,</u> 652 F.2d 274, 277 (2d Cir. 1981).

---

default judgments as to Ramaswamy and Erickson are resolved herein. Plaintiff's request for an order compelling the N.Y.S. Attorney General to provide a mailing address is also denied, because the Court issued such an order on March 6, 2002. Finally, Plaintiff's request for more time to serve Erickson is terminated as moot given that 1) Plaintiff's request was already granted by Order dated April 18, 2002, and 2) the Court's records contain certifications that Plaintiff mailed a copy of the summons, amended complaint and all supporting papers to Erickson on August 14, 2002, and that a process server, on or about August 16, 2002, served Erickson with copies of the summons and the Second Amended Complaint. (<u>See</u> Affirmation in Support of Plaintiff's Motion for a Default Judgment Against Erickson, dated October 15, 2003, ¶¶ 10-11, Exs. 12-14.)

Defendant Ramaswamy points out that Plaintiff's motion for a default judgment is not in compliance with S.D.N.Y. Local Civil Rule 55.2, and is therefore procedurally defective, because it does not include the clerk's certificate of default, a copy of the claim to which no response was made, and a proposed form of default judgment. In addition, Ramaswamy argues that the delay in serving and filing Ramaswamy's answer was not willful, that the delay caused no prejudice to Plaintiff, and that Ramaswamy has a meritorious defense.

The Court has considered carefully all of the relevant criteria and finds that good cause does exist to grant Ramaswamy relief from the entry of default. As to willfulness, Ramaswamy has proffered evidence that her failure to timely file an answer was the result of a clerical error on the part of her attorney and his staff. More specifically, Ramaswamy has proffered evidence that Eleanor Goldberg, the secretary of Ramaswamy's attorney, Bruce M. Brady, entered the instant case into Brady's calendar system upon receiving the complaint on December 28, 2001, and made a diary entry intended to remind Brady to file a timely answer but that, in the wake of Goldberg's retirement days after the complaint was received and the ensuing transition to a new secretary, as well as Brady's engagement in two trials in state court which lasted until March 2002, the due date for the answer was overlooked, and the oversight was not discovered until March 2002. (Declaration of Bruce M. Brady, dated May 21, 2002, ("Brady Decl.") ¶¶ 3-5.) Upon discovering the error, Brady promptly attempted to file Ramaswamy's answer. (Id. ¶ 5.)

"Imprudent, inattentive, careless, or even negligent handling of a case, although not to be condoned, does not demonstrate willfulness." Gravatt v. City of New York, et al., No. 97 Civ. 0354 (RWS), 1997 WL 419955, at *3 (S.D.N.Y. July 28, 1997) (internal quotation marks

and citation omitted). "The Court must look for bad faith or something more than mere negligence before rejecting a claim of excusable neglect based on an attorney's or a litigant's error." Id. Here, no evidence of bad faith has been proffered and it is clear that Ramaswamy's answer was filed late due to a clerical error. Thus, the Court finds that Ramaswamy's failure to file a timely answer was not willful.

In addition, the Court finds that the approximately three-month delay in answering Plaintiff's complaint did not cause Plaintiff significant prejudice, given that discovery, which had only begun in a limited fashion as of the time the instant motions were filed, was not meaningfully delayed due to the lateness of Ramaswamy's answer. Further, Ramaswamy has presented a potentially meritorious defense. "To satisfy the requirement that a defaulting party demonstrate the existence of a meritorious defense, the defense need not be ultimately persuasive at this stage." Id. at 4. A defendant "must merely make a sufficient showing to justify further briefing and consideration by the district judge." Id. Ramaswamy has proffered evidence that Ramaswamy had no responsibility for, and was not involved in, decisions relating to Plaintiff's treatment. Ramaswamy also denies that she was the Medical Director of St. Agnes, contending rather that she was the head of the hospital's pathology laboratory.

Therefore, the Court concludes that the relevant factors weigh in favor of a finding of good cause to permit Ramaswamy's late-filed answer to stand. Accordingly, Plaintiff's motion for a default judgment as to Defendant Ramaswamy and an order striking Ramaswamy's untimely answer is denied, and Ramaswamy's motion for an order permitting the late service and filing of her answer is granted.

*Defendant Ramaswamy's Motion for Summary Judgment*

Defendant Ramaswamy moves for summary judgment pursuant to Fed. R. Civ. P. 56(c) with respect to all of Plaintiff's claims against her. Ramaswamy contends that Plaintiff's claims against her should be dismissed because there was no doctor-patient relationship between Ramaswamy and Plaintiff and that, therefore, Ramaswamy did not breach any standard of care with regard to medical treatment rendered to Plaintiff. Ramaswamy also argues that, since she was not involved in any decisions concerning the medical care and treatment of Plaintiff, the Court lacks subject matter jurisdiction of Plaintiff's claims against Ramaswamy. Finally, Ramaswamy asserts that Plaintiff's claims against her are barred by the applicable statutes of limitations.

A motion for summary judgment shall not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "'The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law.'" Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc., 361 F. Supp. 2d 283, 290 (S.D.N.Y. 2005) (quoting Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995)). "In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party." Id. (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). Summary judgment should be denied "[i]f there is 'any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party.'" Id. (quoting Chambers v. TRM Copy Centers Corp., 43 F.3d

29, 37 (2d. Cir. 1994).

### Ramaswamy's Role in Plaintiff's Medical Treatment

Ramaswamy proffers evidence in the form of her own affidavit asserting that she was not personally involved in any of the medical decisions made at St. Agnes concerning Plaintiff, that she had never heard of Plaintiff before being served with copies of the summons and complaint in this case, and that, contrary to the allegations in Plaintiff's Second Amended Complaint, Ramaswamy was never the Medical Director of St. Agnes. (Affidavit of Gita Ramaswamy, dated April 23, 2002 ("Ramaswamy Aff.") ¶¶ 5-9.) Ramaswamy further asserts in her affidavit that she was the Director of the Pathology Laboratory at St. Agnes during the relevant time period, and that in that capacity she "never made treatment decisions concerning patients at the hospital" and never was "responsible for the training of medical personnel in the diagnosis and management of medical conditions." (Id. ¶¶ 6, 9.) Ramaswamy contends that, since she had no involvement in Plaintiff's medical care, Plaintiff can neither make out a prima facie case of medical malpractice under New York law nor meet the standards of proof required for a section 1983 claim as to Ramaswamy.

Plaintiff has proffered laboratory reports from his medical records relating to his stays at St. Agnes during the relevant period which, near the top of each page, read as follows:

St. Agnes Hospital
305 North Street, White Plains, NY 10605
Gita Ramaswamy, MD, Director

(Plaintiff's R.56.1(a) Stmt., Exs. D-4 - D-9.) Further, Plaintiff asserts in his affidavit in support of his cross-motion for summary judgment that "[t]hroughout my stays in St. Agnes Hospital, the medical personal (sic) and the treating physicians represented to me that the team of

nephrologists that were being (sic) treating me were employed by St. Agnes Hospital and that Gita Ramaswamy was, in fact, the medical director of St. Agnes Hospital." (Candelaria Aff. ¶ 13.) The Court finds that, even viewing the evidence in the light most favorable to Plaintiff, the non-moving party, no material issue of disputed fact exists as to what Ramaswamy's position was during the relevant period or as to what Ramaswamy's role, if any, was in the medical care provided to Plaintiff at St. Agnes during the relevant period. Plaintiff has proffered no admissible evidence contraverting Ramaswamy's affidavit. The presence of Ramaswamy's name on the laboratory reports is consistent with Ramaswamy's assertion that she was the Director only of the Pathology Laboratory, and Plaintiff has not proffered any other hospital documentation naming Ramaswamy as director. His conclusory assertions in his affidavit, relating to alleged representations by unidentified hospital personnel and treating physicians, are hearsay and are thus insufficient to frame a genuine issue of material fact in this regard. Therefore, Ramaswamy is entitled to judgment as a matter of law and her motion for summary judgment is granted.

*Plaintiff's Cross-Motion for Summary Judgment as to Plaintiff's Claims Against Defendants St. Agnes and Ramaswamy*

In response to St. Agnes' motion to dismiss and Ramaswamy's motion for summary judgment, Plaintiff cross-moves for summary judgment on his section 1983 and New York state law medical malpractice claims against both St. Agnes and Ramaswamy.

For the reasons explained above, Ramaswamy's summary judgment motion is granted. For substantially the same reasons, Plaintiff's cross-motion against Ramaswamy is denied.

As to Plaintiff's section 1983 and medical malpractice claims against St. Agnes,

the Court finds that, viewing the evidence in the light most favorable to the non-moving party, there are material issues of disputed fact which preclude the granting of summary judgment in Plaintiff's favor. Plaintiff's claims are predicated on his allegations that the medical staff at St. Agnes failed to diagnose his treatable underlying kidney disease FSGS. Plaintiff contends that, had this disease been diagnosed and treated in a timely fashion, he might never have become dependent on dialysis for survival. Plaintiff proffers evidence to support these allegations in the form of transcripts of the testimony of two expert witness in a related case. St. Agnes, however, has proffered evidence in the form of medical records from the relevant period indicating that Plaintiff was diagnosed with FSGS and that the possibility of doing a biopsy, and the rationale for not performing the procedure, were discussed with Plaintiff. (Affidavit of Laura B. Jordan, dated July 31, 2002, ("Jordan Aff."), Ex. A.) Thus, there is a material issue of disputed fact as to whether the medical staff at St. Agnes failed to properly diagnose and treat Plaintiff's underlying kidney disease.

Plaintiff's motion for summary judgment is therefore denied.

*Plaintiff's Motion for Sanctions Pursuant to Fed. R. Civ. P. 11*

Plaintiff has also moved pursuant to Fed. R. Civ. P. 11 for "sanction-for out-of-pocket expense incurred in preparing" his summary judgment motion and his opposition to Ramaswamy's motion for summary judgment. Plaintiff has not, however, demonstrated compliance with the procedural provisions of Rule 11, which require service and a 21-day waiting period before any motion is filed with the Court so that the non-moving party has an opportunity to withdraw the allegedly offending submission. Fed. R. Civ. P. 11(c)(1)(A). In addition, in light of the Court's disposition of Ramaswamy's motion, the Court clearly cannot

conclude, with respect to the legal position taken in Ramaswamy's motion for summary judgment, that under existing precedents "there [was] no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." Mareno v. Rowe, 910 F.2d 1043, 1047 (2d Cir. 1990). Thus, the Court finds that there is no substantive basis for the imposition of a sanction here. Plaintiff's motion for Rule 11 sanctions is denied.

*Plaintiff's Motion for a Default Judgment Against Defendant Erickson*

On January 27, 2004, Plaintiff filed a motion for a default judgment on his claims against Defendant Erickson. Plaintiff's motion is not is compliance with Local Civil Rule 55.2, which provides, in pertinent part, that a "party seeking a judgment by default shall apply to the court as described in Federal Rule of Civil Procedure 55(b)(2), and shall append to the application (1) the clerk's certificate of default, (2) a copy of the claim to which no response has been made, and (3) a proposed form of default judgment." Local Civil Rule 55.2(b). Plaintiff's submissions in support of his motion do not include the clerk's certificate of default or a proposed form of a judgment. Plaintiff also failed to comply with Rule 2.C. (formerly Rule 1.A.2.) of the Individual Practices of the undersigned, which requires a party wishing to obtain a default judgment to notify the Court by letter of its desire to seek a default judgment before making the motion, and to include a copy of the clerk's certificate of default along with the party's motion papers.

Accordingly, Plaintiff's motion for a default judgment as to Erickson is denied without prejudice to renewal upon compliance with S.D.N.Y. Local Rule 55.2 and the order, authorizing an application for a default judgment, issued concurrently herewith. The Court deems the filing and service of Plaintiff's earlier motion to be substantial compliance with the

requirements of Rule 2.C. of the Individual Practices Rules.

Plaintiff is hereby directed to contact this Court's Pro Se Office (which is located at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, Room 230, New York, New York 10004, telephone (212) 805-0177) for further guidance as to compliance with the relevant procedures.

## CONCLUSIONS

For the foregoing reasons, Defendant St. Agnes' motion to dismiss the Second Amended Complaint is denied. The Court hereby directs counsel for St. Agnes to serve on Plaintiff and file with the Court within thirty (30) days of the date of this Opinion and Order a statement indicating where St. Agnes can currently be served. The Clerk's Office is directed to issue a amended summons to Plaintiff, and Plaintiff is directed to provide the amended summons, a copy of the Second Amended Complaint, and any other necessary paperwork, to the U.S. Marshals Service within thirty (30) days of the date that Plaintiff receives the statement indicating where St. Agnes can be served. Plaintiff is directed to consult the Court's Pro Se Office (which is located at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, Room 230, New York, New York 10004, telephone (212) 805-0177) for information as to how he can obtain the amended summons from the Clerk's Office and effect service of process.

Plaintiff's motion for a default judgment against Ramaswamy and for an order striking Ramaswamy's untimely answer is denied. Ramaswamy's motion for an order permitting the late service and filing of Ramaswamy's answer is granted. Ramaswamy's motion for summary judgment pursuant to Fed. R. Civ. P. 56 is granted.

Plaintiff's cross-motion for summary judgment pursuant to Fed. R. Civ. P. 56 is

denied.  Plaintiff's motion for Rule 11 sanctions as to Ramaswamy is denied.

Plaintiff's motion for a default judgment against Defendant Erickson is denied without prejudice to renewal upon compliance with S.D.N.Y. Local Rule 55.2 and the order, authorizing an application for a default judgment, issued concurrently herewith.  The Court deems the filing and service of Plaintiff's earlier motion to be substantial compliance with the requirements of Rule 2.C. of the Individual Practices Rules.  Plaintiff is hereby directed to contact this Court's Pro Se Office for further guidance as to compliance with the relevant procedures.

SO ORDERED.

Dated: New York, New York
June 27, 2005

LAURA TAYLOR SWAIN
United States District Judge